Mr. Frank. May it please the Court, Ted Frank, for the Object to Repellent. Last time we were here, this Court correctly held, based on Seventh Circuit precedent, that the District Court needed to prioritize ex-ante evidence when trying to reconstruct the market, trying to reconstruct the negotiations that would have generated the ex-ante fee in performing market mimicking. And regrettably, the Court did not do that. On remand, it awarded 30%, though none of the ex-ante evidence supported a rate that high. Every pre-existing bid was much lower, every pre-existing fee agreement was lower, but the District Court used what other District Courts awarded to say, this is what the market rate would be. And that's backwards. And yes, it used a spreadsheet and made calculations and medians and all of that, but 80% of the data on the spreadsheet came from ex-post awards rather than pre-existing negotiations, which is superior evidence of what would have happened. And to a certain extent, the District Court just misunderstood what it meant to mimic a market. It acknowledged that, yes, class counsel, dozens of times, voluntarily avails itself of litigating a Ninth Circuit where it knows in advance that it's got a presumptive 25% award that has a substantial chance of being adjusted downwards because of the megafund rule. Well, Ninth Circuit cases were included in the District Court's spreadsheet. I don't remember how many of the 17 cases of ex-post awards, I think there were 17 of those, and I don't remember how many of them were from the Ninth, but some of them were. Some of them were. It selectively included those ex-post awards. But I think what's important here is you're trying to recreate the negotiation. And class counsel has revealed by their continued choice to continue to litigate in the Ninth Circuit that they would be willing to accept less than 25%, their expectation going into the Ninth Circuit. They voluntarily initiate litigation there. And indeed, at SA-5, the District Court acknowledges that class counsel can profitably perform the work at below 25%, but ultimately decided not to use that ex-ante evidence because there's all this ex-post evidence that many courts award 30, 33%. And therefore, at the negotiation, class counsel would just simply refuse to accept 25%, less than 25%, because it could go and get an ex-post award of 30%. And I think that misunderstands how, what Stericycle called a sophisticated client engaging in this negotiation. And it says, we have all these courts awarding us 30 to 33%. But then the sophisticated client calls up Boyce-Schiller and says, can you do it for less than 30%? And Boyce-Schiller says, yeah, we could do it for 25%. And then the client calls up Hausfeld and says, I have Boyce-Schiller saying they can do it for 25 and class counsel here saying they can do it for 30. What can you do it for? And eventually you would get negotiated down. We have to write an opinion in this case, affirm or reverse, that has a rule statement in it. And I was struggling to find a rule statement about the standard, legal standard here, especially in an abuse of discretion standard of review regime, which is what we have at this point. There's no methodological error. We already resolved that in the last appeal. The district court applied the appropriate methodology. And so there needs to be a finding of an abuse of discretion. And for that, we need something concrete that constitutes a legal error of some sort or some sort of a discretionary judgment that's just beyond the appeal. And we have to state it in a way that appeals courts state these things that yields a rule statement that can be applied in other cases. And I'm trying to find one in your challenge. What's the rule statement? What do you want this opinion to say? I think market mimicking is a perfectly good rule statement. And that didn't happen here because the district court cut that sophisticated client negotiation that StereoCycle asks for off at the first bid. And while Silverman says that the district court doesn't have to require bidding ex-ante, but if it's going to award fees ex-post, it's supposed to mimic what would have happened at that ex-ante bidding. And we know from the ex-ante evidence that the bidding would be much lower than this. Because as the district court itself said, the firms can profitably perform this work below 25%. The district court discounted or gave little weight to those bids on remand because they were in cases where the government had performed most of the investigative work. As I understand the district court's reasoning here for sort of returning to that position that he was at before, that the bids don't get a lot of weight, the ex-ante bids, because they were in cases where there had already been government investigations and so it's not on all fours with this case. What's wrong with that reasoning? Well, it applied that standard inconsistently. It just grabbed ex-post awards without analyzing them to see if those ex-post awards were on all fours or whether they involved more difficult cases, whether they involved increased risk because it was past the summary judgment or close to trial. No, that's the ex-post, how he evaluated the ex-post awards. We'll get to that in a minute. I'm talking about we've got the ex-ante bids and we've got the fee agreement in the case that goes by the initials IRS. It doesn't stand for what it usually stands for. But that's the acronym that is being used here. But then everything else is ex-post because that's all there is in terms of the data. We have the ex-ante evidence that class counsel goes into the Ninth Circuit voluntarily. But how did, I guess I'm trying to pin down, how was the discretionary decision, how did he, I guess this is a matter of discretion, correct? Right, but he has to apply the standard correctly. And so the rule of law... And if you're going to reconstruct the marketplace, you can't say the market rate is 30% because then why would a class counsel who has a market rate of 30% regularly subject themselves to an expectation of below 25%? And again, if I'm getting $30 an hour and I get a job offer in San Francisco for $20 an hour, if my market rate is really $30 an hour and I can go and get $30 an hour whenever I want, I'm not going to take the $20 an hour job. But we see class counsel over and over and over again going into the Ninth Circuit voluntarily. And we have the district court acknowledging at SA-5 that it can do so profitably. And that, I think, shows the disconnect between reconstructing the marketplace. Because reconstructing the marketplace, unless you're going to assume that it's a cartel that the sophisticated client is negotiating with, if there is competitive negotiations among several qualified firms, it's going to get negotiated down to a profitable number where the firm can perform the work profitably. But not necessarily the super market rate or the above market rate that ex post awards have been going at. And the district court never considered... When the district court said, the market rate must be 30% to 33% because so many courts award this, it never considered that the artificial nature of the Ninth Circuit rule was no more artificial than the 30% to 33% that the other courts were awarding. Now, the reason price caps are bad is because they cause shortages. If you set a price cap at a rate that is below the market rate, you're going to have shortages. People won't provide the goods or services to sell. But that's not happening in the Ninth Circuit. Whatever quote-unquote artificial reality to their 25% benchmark with the megafund rule, which makes the rates below 25%, they're still getting cases brought there. Dozens and dozens of cases, including by class counsel. And that's because, as the district court acknowledged at SA-5, you can profitably bring cases at that rate. And that suggests that if you were to perform market mimicking the correct way, the market rate is going to be at that profitable level, negotiated down to what that competitiveness would be. Mr. Frank, do you mind reciting, just so that I make sure I have it clear, the rule statement that you would request? We're not asking for anything that wasn't in Stereocycle or... Synthroid? Synthroid, thank you. Yeah. It's... What would a sophisticated client, ex ante, negotiate? Perform the pretend auction that the court didn't do in the first place. I'll reserve the rest of my time. Thank you. Mr. Berman. Good afternoon, Your Honor. Steve Berman on behalf of class counsel. This court directed the district court to give due consideration, among other factors in the case law, to two specific categories of evidence that you found he had not meaningfully weighed. Class counsel's prior bids and awards from the Ninth Circuit. And the court did exactly that. It considered both categories of evidence, it weighted each category of evidence, and it considered all other factors that are relevant to deciding what an ex ante fee would be. It then exercised its discretion to set a fee of 30%. Now, at this stage, unlike the prior appeal, the appellant doesn't say the court failed to consider evidence. He's just quarrelling with the determinations that were made. Except the... Is it Klonoff declaration? Well, we didn't rely on the Klonoff declaration. But are the cases that were cited in the Klonoff declaration, are those a representative sample or not? Well, yes, they are. They are. So if the district court relied on them, that would be erroneous? Well, the district court did not rely on them. How are you getting there? Yeah, how are you getting to that point? I'm getting to the point because he identified what empirical studies he was relying on, and those were the studies... Andron's Seventh Circuit study that showed 30% or more, and the litigation centre study that showed 30% or more. He did not cite the Klonoff. Well, we're not talking about citations of the Klonoff declaration. We're talking about inclusion of the cases that were in the Klonoff declaration in the spreadsheet. Because those cases are publicly reported, and they were in the materials we submitted as cases that we had worked on or cases that were in the public domain antitrust cases. He didn't need to go to the Klonoff declaration to find those. So if he didn't need to go there, but he did go there and include them in the spreadsheets, is that a problem for you? No, it's not a problem, and here's why it's not a problem. What the court was trying to do when it was looking at ex-post awards is the court looked at ex-post awards in this way. There aren't a lot of ex-ante bids. Very few. And so the court found that those bids were imperfect. He looked at each one and said, they're not really typical or fulsome evidence of what a market rate would be. So I'm gonna go to ex-post awards. Why do I do that? I do that because if I'm going to pitch a case to a client, let's say it's a, uh, not a consumer client, but some other kind of client that's gonna run a class case, and that client's gonna say, what do you propose for a fee? And I'm gonna show them those cases. I'm gonna say those cases, 30% to 33%, they are the market rate, and the client may agree or not agree. But it's certainly evidence that I would use, and it's evidence that the court, I think, properly considered. But where did the cases in the spreadsheet come from? Well, he said that they came from cases that we did, the bid cases, and cases that he scoured, the record of antitrust cases that he thought were of similar size. I-I thought that category of cases that were included in the spreadsheet were from the Klonoff declaration. Is that incorrect? I-I don't recall him saying that. I recall him saying... Well, that's what's cited. He says, um, at page 4, the court compiled the following data in a single spreadsheet, which is attached as an appendix, and here are the four categories. Awards to co-counsel, awards in other antitrust cases around the country, and then there's a parenthetical citation to the record, and that citation is the Klonoff declaration. Okay, and so I'm not understanding what the issue with that is. He didn't rely on the Klonoff declaration? Understood, but where did those cases come from? If you trace through the Klonoff declaration to find out the source for that section of the Klonoff declaration, and I thought they were described as, um, uh, not a representative sample, but examples of fee awards at or around 33% in cases of comparable size. That's correct. That-that's what this page citation to the Klonoff declaration takes us to. Okay. And that was as a part of the experts' advocacy analysis to support a 33% award. And I guess my concern is that the district judge actually cited to the declaration for that point. I hear you, but if you look at the overall context of what the judge has done, you know, those opinions are out there, and they seem to cluster around 30% as the empirical study that Andrew incited. The Seventh Circuit cases cluster around 30%. They were not part of any advocacy piece. And the litigation center study is over 30%. So that chart from the Klonoff declaration that's cited in the district court's opinion where he got most of the data for the spreadsheet, um, is a-is a random sample of awards? I thought it was a sample... examples of 33% awards, not a random sample of awards in cases of comparable size. I don't recall sitting here today. Well, that's kind of an important data point, I think, for us to understand what the district court was driving at. But even if it was not a random sample, I go back to the other empirical studies that he relied on, and those all come out. Those are not gerrymandered in any way, and they still come out at 30%. Right, that... you've zeroed in on exactly the right point. Is this a gerrymandered data sample? Um, which, again, to the rule statement that's supposed to come out of this case. Well, the rule statement that I think should come out of this case is that the district court should consider all available evidence that bears on the issue of what a reasonable rate would have been ex ante. And that evidence includes bids, which the court accounted for. It includes other fees and other comparable antitrust cases throughout the country. And it includes considering the interaction that the court considered when he said, look, clients would ask, what are courts awarding when you negotiate? And the lawyers would say, 30%. And you would look at the Ninth Circuit, and I think there's an interesting comment from Judge Durkin about the Ninth Circuit. And he said, if the market rate was 25%, then why does the Ninth Circuit feel the need to impose...? Right? So that should give you some comfort that Judge Durkin is close. Let me... something I think is really telling here, and that is the appellate says that IRS is an... would have been an appropriate fee. That's 27%. So he says, IRS is not an abuse of discretion. Judge Durkin awarded 30%. How do you leap from... 27% is not an abuse of discretion, but 30% is. There's no logic to making that leap. And therefore, I don't think there was an abuse of discretion in going to 30%, 3% higher. I'm not sure I'm tracking your argument. Your argument is it's not abuse of discretion because of the size of the difference between the numbers? Yes. I mean, if you're willing to say that 27% was an appropriate fee, what logic or rationale in the case law, in the bids or whatever, makes it so that 30% is suddenly an abuse of discretion? And I don't think there's a scintilla of evidence out there that makes that leap for the appellate. But let me turn to the ex ante rates, because that was certainly an important part. I mean, the ex ante bids. That was certainly something that you directed him to look at. And I'm not gonna repeat why he found that they were not appropriate. I'm sure you've read that. But you yourself recognized in your opinion that it could be that circumstances indicate that the prior bids are not determinative. And that's what he found. And the main part he found... So is it your contention that he did not disregard them kind of wholesale? No, in fact, he assigned 20% of the total weight, contrary to what the appellate says, to his grid were those ex ante fees. So he actually bumped up the ex ante consideration. By virtue of the tenfold multiplier? That's right. Not a multiplier, but repeating that same... That's correct. ...ex ante evidence ten times for the IRS case. Yes, so he took your direction to heart. And so he balanced that, gave a great weight, and then he put in the ex post fees, and he came up with a blend, which, again, I go back to, if 27% is not an abuse of discretion, how is it that 30% is? Well, isn't the difference, though, almost $6 million between those figures, Mr. Berman? Yes, but if you're looking at it from a percent standpoint, again, I go back, what facts, what evidence, what bids would suddenly draw you to the conclusion that 27% is okay, but 30% is not? There's nothing there. You're taking from the percentage going backwards versus the data going up to the percentage. That's right. Then why should we use it from the reverse and not forward? Because you're at an abuse of discretion standard. Did he abuse his discretion in awarding 30%? And if it's not an abuse at 27%, there's nothing that leaps out to say it suddenly abuses discretion at 30%. The last point I'd like to make is just, again, in Mr. Andren's brief, I think you all got this, he argues, quote, that the district court diluted the ex ante evidence. As we've discussed, he gave it a much greater weight than any other evidence. Mr. Andren suggests the court erred when his table didn't consider in each case the stage of the case. What's important here is that the stage of this case was very advanced. We had spent 67,000 hours in litigating the case. We'd racked up a load star of $46 million, and the judge found that our contract was exemplary. So the court... So it's in your contention that the case didn't settle early. No, it did not settle early. We took 180 depositions. My hair turned grayer than it had been when this case started. It did not settle early. So I see I have three minutes left, but unless you have questions, I think I've made my points. Thank you, and it's good to see you all again. Thank you. Mr. Frank, anything further? Yes, Your Honor. When he pulled for the spreadsheet from Klonoff, it was a chart from Klonoff saying these are cases that awarded 33%. It wasn't a representative sample. It was very much a cherry-picked sample to prove Klonoff's expert paid-for contention that the market rate is 33% based on ex post evidence. The district court gave zero weight to the lithium bid, zero weight to the optical disk bid, tenfold weight to the interest rate swaps bid, zero weight to the fact that class counsel chooses to litigate in the Ninth Circuit. And if that's enough to quote-unquote prioritize ex ante evidence, it completely obliviates the court's market mimicking approach, because at the end of the day, the court pulled in as many ex post data points as it could. Selectively, we didn't know that he was going to pull from Klonoff, or we would have pointed out that it was cherry-picked, we would have put forward our own data points. But in any event, yes, this was quote-unquote an early stage, because if you look at the grids when there's ex ante negotiating, you have settlement before motion to dismiss, settlement after motion to dismiss, settlement after classical certification, settlement after summary judgment, settlement after trial. So in that relative sense, when you look at the grids that sophisticated parties negotiated, it was quote-unquote early, even though it was after discovery had taken place. That goes to the hours. Exemplary conduct is already counted. When your performance is exemplary, it raises the denominator that you're multiplying the number by. It's double counting to up the percentage, because you've done great work. Your great work got a bigger number than it would have gotten if your work hadn't been great. But going back, there wasn't... The court erred in mimicking the market, because its hypothetical negotiation was class counsel will show up and say, look at all these courts that award us 30% to 33%, and the sophisticated client would say, okay, rather than seek additional bids. And again, as this court has acknowledged, as Derecycle has acknowledged, as Synthroid has acknowledged, a competitive marketplace rate works its way down to what class counsel can perform the work for profitably. If there was competitive bidding, class counsels would have negotiated themselves down to a profitable number, which the court acknowledged below 25% is profitable. And that would have happened. So... The court, yes, gave a 10x multiplier to one case and a 0x multiplier to a few other cases, but that only resulted in it weighting the ex ante evidence 20%. That's not prioritizing. And there's always gonna be more ex post evidence than ex ante evidence, because class counsels have learned don't bid because courts will give you an above-market rate if you wait until after the case to negotiate. Mr. Frank, Mr. Berman has argued that the difference between 27% and 30% is small enough that this is not an abuse of discretion. Your thoughts? Our argument would be that the correct rates in the low 20s, high teens, maybe even lower than that. We acknowledge if you were to remand, the court could say enough magic words to reach 26.6%. You can't have a one-way ratchet where you can imagine a hypothetical opinion that wouldn't be an abuse of discretion where it reaches 26.6% and then say anything within a few points of that is not an abuse of discretion, because, okay, if we're gonna say that 30% isn't an abuse of discretion, why isn't 33% not an abuse of discretion? Why isn't 36%? And on and on. It's gonna be a one-way ratchet permanently going up. And we're already at that stage. A district court... a class counsel cited Broiler Chicken, the district court's opinion in Broiler Chicken, in a megafund. There were no objectors in the district court awards, 33%, even though that's very clearly a windfall. Uh...it really comes down to whether the court wants to enforce its market-mimicking approach, because that requires prioritizing ex-ante evidence and not allowing it to be overwhelmed by ex-post awards that have consistently been above the marketplace, because you don't have objectors in most of these cases. You don't have scrutiny by district courts, because district courts, they're not investigative. If they rely on the adversary process and most of these fee requests aren't adversarially presented, most cases aren't gonna have ex-ante evidence at all. And here we did have ex-ante evidence, and it didn't matter. I'm happy to take any other questions you have. Thank you. Thank you. And our thanks to all counsel. We'll take the case under advisement and we'll close in recess.